IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDYTA STROZYK,                          :
                                        :    CIVIL ACTION
           Plaintiff,                   :    NO. 16-6686
                                        :
      v.                                :
                                        :
PHOENIXVILLE HOSPITAL,                  :
                                        :
           Defendant.                   :


M E M O R A N D U M


EDUARDO C. ROBRENO, J.                        January 18, 2019


          Presently before the Court is the motion for summary

judgment filed by Defendant, Phoenixville Hospital (the

"Hospital"). Plaintiff, Edyta Strozyk, asserts claims against

the Hospital for sexual harassment and retaliation in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e,

et seq. ("Title VII") and the Pennsylvania Human Relations Act,

43 P.S. § 951, et seq. ("PHRA"). For the reasons that follow,

the Court will grant the Hospital's motion.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Strozyk was employed by the Hospital as a pharmacy technician from October 2012 until March 14, 2016 when she was terminated. As a pharmacy technician, Strozyk's duties included supporting the pharmacists, preparing IVs, receiving and filling medication orders and delivering medication. Strozyk was supervised by the Director of Pharmacy, Larry Jones. Strozyk worked with a number of pharmacists including Gerald McGrory.

### A.     The Alleged Sexual Harassment

Strozyk contends that McGrory sexually harassed her on numerous occasions. Specifically, she testified that, on two occasions, McGrory looked her "up and down" and told her she "looked good" or "cute;" called her "sweetheart" several times, including once when he grabbed her arms and asked "what are you making, sweetheart?;" stood or walked closely to her or bumped into her and exhaled "like a bull" on three occasions; sat too close to her in the IV room while he was preparing medications; and asked her "where are we going out to tonight, what are we doing tonight?" Strozyk testified that McGrory engaged in this conduct when "there [were] no bosses" around and "he would

---

[1]     The Court views the facts in the light most favorable to Strozyk, the non-moving party in this case.

choose the right timing, the right place, and he would do it premeditatedly with nobody around."

Strozyk also testified that McGrory would use sexual innuendo around her and other employees, including Jones, and would discuss sexual situations. Strozyk further testified that on at least two occasions, McGrory, along with Jones, directed a female secretary to bend over to reach low filing drawers or to pick up boxes and that they poked each other and laughed while this occurred.

Additionally, Strozyk testified that on one occasion after inquiring of Jones if she could ask him a quick question, he responded that he did not "do quickies" and laughed. This is the only comment that Jones said to Strozyk that she thought was sexually inappropriate.

## B. Strozyk's Complaint to Human Resources

On November 3, 2014, according to Strozyk, she complained to Human Resources ("HR") Director Denise Chiolo that McGrory was making sexual advances towards her, commenting on her looks, and calling her sweetheart. Strozyk told Chiolo that she had not previously raised her concerns with Jones. Chiolo's understanding of the complaint was that Strozyk was concerned because she and McGrory had had a good relationship but now he appeared angry at her and it made her feel uncomfortable. Chiolo

told Strozyk that she would speak to McGrory. Chiolo did not view the complaint as a sexual harassment complaint.

Chiolo talked to McGrory, who, according to Chiolo's testimony, "appeared dumbfounded." According to Strozyk's testimony, she and McGrory interacted minimally after Chiolo talked to him. Strozyk further testified several times that, after Chiolo talked to McGrory, he stopped all sexually inappropriate conduct.

### C. Disciplinary Events

Prior to her November 3, 2014 complaint to HR, Strozyk did not have a disciplinary record at the Hospital. However, on January 5, 2015, Strozyk received a written warning for seven incidents of absenteeism between February 13, 2014 and December 31, 2014 regarding time she took off as sick days. Additional discipline followed.

On January 22, 2015, Tara Raub, the pharmacy buyer, complained that Strozyk refused to fill out the "fridge sheets." While Strozyk acknowledged that it was part of her duties to fill out the fridge sheets, she asserts that she refused Raub's multiple requests to perform that duty because she was too busy. After Raub complained to Jones, Strozyk alleges that Jones told her she was fired, but ultimately, she was not. Jones testified that he told Strozyk that "if you are refusing to do this, I no

longer need your service today. Go change, punch out, you are done for the day."

Strozyk went to Chiolo at HR to report that Jones had fired her. She expressed her opinion that the work distribution was unfair, she was too busy to fill out the fridge sheets, and that filling out the fridge sheets should not be her responsibility. Jones joined the meeting at Chiolo's suggestion along with Rick Stogdale, the pharmacy manager. During the meeting, Jones stated that Strozyk had angrily refused to fill out the fridge sheets and that she should leave for the day to cool off. Strozyk contends that she was clear that Jones fired her. Chiolo believed Strozyk was being disrespectful and threatening towards Jones and Stogdale during the meeting, including talking over Stogdale and stating that she was "going to make it nasty." According to Chiolo, after Chiolo pointed out Strozyk's inappropriate behavior towards Jones and Stogdale to her, Strozyk apologized. Strozyk was suspended for the rest of the day in that Jones sent her home.

Strozyk's attorney sent letters dated January 27, 2015 and February 6, 2015 to the Hospital regarding the alleged sexual harassment and retaliatory discipline for her complaint regarding McGrory. On March 24, 2015, Strozyk filed a charge of discrimination alleging sexual harassment by McGrory and subsequent retaliation.

On October 19, 2015, Strozyk received verbal counseling for failure to comply with a Hospital policy. Specifically, Strozyk was accused of failing to re-order items by writing down requests in the "re-order" book rather than verbally requesting items. Strozyk submitted a written response to the discipline asserting that she believed the discipline was retaliatory. She claimed that she properly used the re-order book.

On November 24, 2015, Strozyk received verbal counseling for unprofessional conduct after Jones allegedly saw Strozyk storm into Stogdale's office and yell at him to "get [his] shit together" in relation to a conversation about co-workers' call outs, staff coverage, and co-workers' duties. Jones testified that Stogdale explained to him that this was Strozyk's "normal procedure" when she was unhappy. Jones testified that during the encounter, Strozyk was acting "belligerent and [ ] insubordinate."

On February 5, 2016, Strozyk was given a second written warning regarding fourteen unexcused absences.

On March 10, 2016, Dawson Hoffman, a pharmacist, approached Strozyk after her lunch and confronted her about not filling two prescriptions before she left for lunch. Strozyk testified that Hoffman slammed the door to her cubby and

screamed at her.[2] According to Strozyk, Hoffman explained that it was a "stat order" that needed to have been filled. When Strozyk failed to fill the prescription before she left for lunch, Hoffman complained to Jones about Strozyk refusing to perform her duties. Strozyk could not remember if Hoffman had asked her to fill the prescriptions, but in any event, she did not fill them before she left for lunch. When Strozyk went to Jones' office, Strozyk asserts that Hoffman stuck his tongue out at her and danced, and that Jones witnessed this behavior.

Jones testified that he then directed Strozyk to fill the prescriptions several times but that Strozyk refused, stating that she would not until Hoffman apologized for the way he spoke to her. Strozyk also testified that she told Jones that she was refusing to do anything for Hoffman until he apologized, however, she later testified that she did not remember if Jones asked her to fill the prescriptions. In light of her refusal, Jones testified that he told her to go home for the day but that Strozyk refused and went to HR.

When Jones and Strozyk arrived at HR, Chiolo testified that Strozyk was screaming and "was just a mess," spoke over Jones, refused to answer questions, told Chiolo and Jones to

---

[2]     Other eye-witnesses dispute this characterization of the conversation, but the Court views the facts in the light most favorable to the Plaintiff.

call her lawyer if they had questions, called them liars, wanted
Jones' version of events in writing, and accused them of
harassment. Chiolo testified that "[i]t was like nothing I have
ever experienced in over 20 years of working in human
resources." Strozyk testified that she had a breakdown during
the meeting, begged them to take her to the emergency room, and
did not remember much of what was said.

Jones asked the employees who had been present to
write statements about what happened between Hoffman and
Strozyk. The witnesses indicated that Hoffman told Strozyk to
fill the prescriptions and that Strozyk responded that she was
too busy and it was not her job.

While Jones and Chiolo reviewed the written statements
and consulted with in-house counsel, Strozyk continued to work
for three more days. However, after completing the review, Jones
terminated Strozyk's employment on March 14, 2016. Strozyk
testified that the details in her termination papers were not
untrue, which includes that she refused to fill two
prescriptions after repeated requests.

D. **Procedural History**

Strozyk filed her complaint on December 30, 2016 and
an amended complaint on April 5, 2017. On May 30, 2017, after a
hearing, the Court granted the Hospital's motion for partial
dismissal, dismissing Count III of the amended complaint (the

8

Pennsylvania Whistleblower Act). After discovery was completed, the Hospital filed the instant motion for summary judgment on December 11, 2017, to which Strozyk responded.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court views the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material

fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (citing Fed. R. Civ. P. 56).

## III. DISCUSSION[3]

### A.    Sexual Harassment by McGrory

In order to state a claim for harassment based on a hostile work environment, a plaintiff must establish that: "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013).

Strozyk contends that McGrory's behavior towards her amounted to sexually harassing discrimination. For the purposes of this motion, the Hospital argues only that Strozyk cannot establish respondeat superior liability. An employer will only be liable for the sexual harassment caused by a co-worker (as

---

[3]    Claims under Title VII and the PHRA are analyzed using the same standards. Huston v. Procter & Gamble Paper Prod. Corp., 568 F.3d 100, 104 n.2 (3d Cir. 2009). Thus, the Court will not separately discuss the two statutes.

opposed to a direct supervisor)[4] if the plaintiff shows that his

or her "employer failed to provide a reasonable avenue for

complaint or, alternatively, if the employer knew or should have

known of the harassment and failed to take prompt and

appropriate remedial action."[5] Huston, 568 F.3d at 104. In other

words, "an employer may be directly liable for non-supervisory

co-worker sexual harassment only if the employer was negligent

in failing to discover the co-worker harassment or in responding

to a report of such harassment." Id. at 104-05.

An employer is deemed to have known about the

harassment when management-level employees have actual or

constructive knowledge of the harassment. Id. at 105. Such

individuals have constructive knowledge "where an employee

provides management level personnel with enough information to

raise a probability of sexual harassment in the mind of a

reasonable employer, or where the harassment is so pervasive and

---

[4]     A supervisor is one who can "take tangible employment
actions against the victim, i.e., to effect a significant change
in employment status, such as hiring, firing, failing to
promote, reassignment with significantly different
responsibilities, or a decision causing a significant change in
benefits." Vance v. Ball State Univ., 570 U.S. 421, 431 (2013)
(internal quotation marks omitted). It is undisputed that
McGrory could not take such tangible employment actions against
Strozyk and is, therefore, not Strozyk's supervisor. Jones,
however, clearly wielded those powers and is a supervisor.

[5]     Strozyk does not contend that there was no reasonable
avenue to pursue her claim.

open that a reasonable employer would have had to be aware of it." Kunin v. Sears Roebuck & Co., 175 F.3d 289, 294 (3d Cir. 1999).

The salient issue, therefore, is whether the Hospital was negligent in that Jones had actual or constructive knowledge of the alleged harassment and HR failed to take appropriate timely remedial action.

### 1.    Knowledge of Strozyk's Allegations

The Hospital argues that there is no evidence that, prior to Strozyk complaining to HR, Jones had enough information to allow him to suspect McGrory was sexually harassing Strozyk or that his harassment of her was so pervasive and open that Jones must have been aware of it. Strozyk, on the other hand, appears to argue that Jones was aware, or should have been aware, of McGrory's conduct because Jones and McGrory together directed a secretary to bend over to retrieve files and boxes and laughed about it. Essentially, Strozyk argues that because Jones and McGrory sexually harassed one other woman, Jones must have known that McGrory sexually harassed her as well.

It is not clear how harassment of another woman would put Jones on notice of the specific harassment of Strozyk, and Strozyk provides no other facts from which the Court could infer such notice. Indeed, Strozyk's testimony supports the conclusion that Jones could not have reasonably known of the alleged

harassment. Strozyk testified that McGrory only harassed her
away from others and did so on purpose to hide his harassment.
Thus, even taken in the light most favorable to Strozyk, there
are no facts to support a finding that, prior to complaining to
HR, Jones had enough information to allow him to suspect McGrory
was sexually harassing Strozyk or that his harassment of her was
so pervasive and open that Jones must have been aware of it. Id.
(providing that there is a balance between "faulting the
employer for turning a blind eye to overt signs of harassment"
and "not requiring it to attain a level of omniscience, in the
absence of actual notice, about all misconduct that may occur in
the workplace").

### 2. The Hospital's Remedial Action

Once Strozyk informed her employer of the alleged
sexual harassment, it is only liable therefor if its HR
department "failed to take prompt and appropriate remedial
action." Huston, 568 F.3d at 104. Strozyk argues that when she
did bring the issue to Chiolo, nothing was done to stop the
harassment, focusing on what she perceives as a lack of adequate
investigation. However, according to Strozyk's own testimony,
the harassment stopped after Chiolo talked to McGrory. In that
the remedial action was effective, it was de facto appropriate.
See Kunin, 175 F.3d at 294 (the employer "took effective action
as he instructed Lodato to stay away from Kunin who experienced

no further harassment from Lodato. Our precedents provide that when an employer's response stops harassment, there cannot be Title VII liability"); Bouton v. BMW of North America, Inc., 29 F.3d 103, 110 (3d Cir. 1994) (a procedure that stops the harassment "shields the employer from Title VII liability for a hostile environment"). As a result, whether Chiolo exhausted every avenue of investigation is irrelevant. Knabe v. Boury Corp., 114 F.3d 407, 412 (3d Cir. 1997) ("The question before us is not whether the investigation was adequate – it appears not to have been – but rather whether the remedial action was adequate").

Strozyk has failed to produce evidence that would allow a reasonable jury to conclude: (1) that, prior to her complaint to Chiolo, Jones had enough information to allow him to suspect McGrory was sexually harassing her or that McGrory's harassment of her was so pervasive and open that he must have been aware of it; or (2) that the Hospital did not provide prompt and appropriate remedial action once it learned of the conduct. Therefore, the Court will grant summary judgment in favor of the Hospital on Strozyk's claim for sexual harassment under Title VII and the PHRA.

## B. Retaliation by the Hospital

To establish a prima facie claim of retaliation, a plaintiff must show that: "(1) she engaged in activity protected

by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)).

Once the plaintiff establishes a prima facie case, under the McDonnell Douglas framework, "'the burden shifts to the employer to advance a legitimate, non-retaliatory reason' for its conduct and, if it does so, 'the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" Moore, 461 F.3d at 342 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997)). Ultimately, "[a] plaintiff asserting a claim of retaliation has a higher causal burden than a plaintiff asserting a claim of direct status-based discrimination." Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 257-58 (3d Cir. 2017) (citing 42 U.S.C. § 2000e-2(m)).

### 1. The Prima Facie Case

Regarding her prima facie case, Strozyk contends that as a result of her November 3, 2014 sexual harassment complaint, the Hospital took a number of adverse employment actions by disciplining her and ultimately terminating her. Specifically,

she proffers the following disciplinary events as being retaliatory: (1) January 5, 2015 (her first written warning for excessive absences); (2) January 22, 2015 (when Jones allegedly told her she was fired after refusing to fill out the fridge sheets, but was, in any event sent home for the day); (3) October 19, 2015 (her verbal counseling for failure to comply with the policy of using the re-order book); (4) November 24, 2015 (her verbal counseling for unprofessional conduct of yelling at Stogdale); (5) February 5, 2016 (her second warning for excessive absences); and (6) March 14, 2016 (her termination for refusing to fill prescriptions).

For the purposes of its motion, the Hospital concedes the first two prongs of Strozyk's prima facie case. However, it argues that Strozyk has failed to causally link her complaint to HR with her discipline and termination.

A plaintiff may rely on a variety of evidence to establish the necessary causal link including (but not limited to): (1) an employer's inconsistent explanation for taking an adverse employment action; (2) a pattern of antagonism; or (3) temporal proximity unusually suggestive of retaliatory motive. Id. at 260. To establish the link, Strozyk must produce evidence "sufficient to raise the inference that her protected activity was the likely reason for the adverse employment action." Id. at 259 (internal quotation marks and alterations omitted).

Specifically, Strozyk argues that the temporal proximity and the pattern of antagonism establish that her complaint was likely the reason for the discipline and her firing.

The Court first notes that the two-month gap between Strozyk's complaint and the first disciplinary act, while probative, is not so "unusually suggestive of retaliatory motive" that the timing alone might establish the necessary causal connection. <u>Williams v. Philadelphia Hous. Auth. Police Dep't</u>, 380 F.3d 751, 760 (3d Cir. 2004) (internal quotation marks omitted) (finding that two months was not unusually suggestive); <u>Thomas v. Town of Hammonton</u>, 351 F.3d 108, 114 (3d Cir. 2003) (finding that three weeks was not unusually suggestive).

The Court next examines whether any reasonable jury could conclude that an intervening pattern of antagonism arose after Strozyk's complaint. As stated, Strozyk primarily relies on the series of disciplinary actions to support her argument that such a pattern existed. An initial weakness in Strozyk's argument is that she admits to most of the conduct underlying the discipline and that imposition of discipline was not against the Hospital's policy. For example, Strozyk admits that her discipline on January 5, 2015 and February 5, 2016 for excessive absences was in accordance with Hospital policy and that she was, in fact, absent during the stated times. Regarding the

January 22, 2015 incident concerning filling out the fridge sheets, Strozyk admits that it was within the scope of her job and that she did not fill them out because she was too busy. Finally, regarding her March 14, 2016 termination, Strozyk admits that she did not fill the prescriptions, and she testified that there was nothing untrue in the factual description contained in her termination papers.[6]

In addition to Strozyk's acceptance of many of the underlying facts supporting the discipline, the alleged retaliatory events are spread over a year with generally at least a month between each event. Strozyk provides no evidence, other than the fact that they occurred after she lodged her complaint, which links these disciplinary events to her protected action. See Bartos v. MHM Corr. Servs., Inc., 454 F. App'x 74, 79 (3d Cir. 2011) (non-precedential) ("Though Bartos was subject to several disciplinary actions in the period between her first deposition testimony and her termination,

_____

[6]     Strozyk does dispute the basic facts of the two remaining incidents. Regarding the October 19, 2015 discipline for failing to fill out the re-order book, Strozyk gave the Hospital a written response indicating that: (1) she believed Jones wrote up the wrong individuals for discipline; (2) she felt the discipline was retaliatory in nature; (3) she did put orders in the re-order book; and (4) the re-order book was a poor system to use. Regarding her November 24, 2015 discipline for yelling at Stogdale, while she does not deny the event occurred, she denies yelling "get your shit together" and instead testified that she said, "we don't have our shit together."

these actions do not amount to a pattern of antagonism as they were neither consistent and continuous during the intervening period nor does Bartos offer any basis for linking the disciplinary actions to her deposition testimony."); see also Wells v. Retinovitreous Assocs., Ltd., No. CV 15-5675, 2016 WL 3405457, at *3 (E.D. Pa. June 21, 2016), aff'd, 702 F. App'x 33 (3d Cir. 2017) ("A pattern of antagonism, however, is more than a series of disciplinary actions; a plaintiff must 'offer [a] basis for linking the disciplinary actions to her [protected activity].'") (quoting Bartos, 454 F. App'x at 79).

The Court concludes that the discipline at issue here, and especially the few instances of discipline for which Strozyk disputes the factual bases, does not constitute a "constant barrage of written and verbal warnings" all occurring "soon after plaintiff's initial complaints" which has been found sufficient to establish the necessary causal connection. Robinson v. Se. Pennsylvania Transp. Auth., Red Arrow Div., 982 F.2d 892, 895 (3d Cir. 1993). Likewise, Strozyk has failed to produce sufficient evidence raising the inference that her protected activity was the likely reason for the discipline, rather than that the Hospital believed she had violated hospital policies. Carvalho-Grevious, 851 F.3d at 259.

As a result, the Court finds that Strozyk has failed to establish a prima facie case of retaliation. Regardless, the

Court will proceed to analyze Strozyk's facts under step two and three of the McDonnell Douglas test.

### 2. Legitimate Reasons and Pretext

As set forth above, the Hospital has provided facially legitimate reasons for the discipline given to Strozyk – namely, that she violated Hospital policies. As a result, Strozyk must establish that the proffered reasons are pretextual. To do so, Strozyk must produce sufficient evidence such that a reasonable jury could conclude "that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Moore, 461 F.3d at 342 (quoting Krouse, 126 F.3d at 500-01); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."). Pretext is not established by evidence showing that the "the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005) (quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)). Rather, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

legitimate reasons for its action that a reasonable factfinder <u>could</u> rationally find them unworthy of credence." <u>Id.</u> (quoting <u>Fuentes</u>, 32 F.3d at 765).

Focusing on Strozyk's termination, the Hospital argues that the undisputed facts shows that Strozyk did not fill the prescriptions and Strozyk did not contradict that she screamed and called Chiolo and Jones liars. Before terminating her, Chiolo and Jones interviewed witnesses, obtained written statements, and consulted with in-house counsel. Thus, the Hospital concludes that it had every right to fire Strozyk.

Strozyk argues in response that she disputes that Jones told her to fill the prescription and instead the two of them went straight to HR without further discussion after Jones confronted her. However, this argument is contracted by her testimony: (1) that she did not remember whether Jones told her to fill the prescriptions; and (2) that her termination documents, which include that Jones repeatedly asked her to fill the prescriptions, were not wrong. Regarding the other alleged instances of retaliation, Strozyk mainly points to minor factual disagreements[7]; the fact that she had no disciplinary record

---

[7] For example, Strozyk contends that a genuine dispute regarding a material fact exists because Chiolo testified that she did not understand that Strozyk was lodging a sexual harassment claim, while Strozyk testified that she definitely complained of sexual harassment. It is not clear to the Court how this fact is material to the pretext analysis. Moreover, the entire analysis above is based on the facts taken in the light

before filing the complaint; and the allegation that Jones participated in harassing behavior against other women and witnessed Hoffman dancing and making fun of her without comment.

The Court concludes that Strozyk has not satisfied her burden of showing pretext. Strozyk has failed to produced evidence which would lead any reasonable jury to the conclusion that the Hospital's stated reason for terminating Strozyk was false because she has failed to provide any evidence "contradicting the core facts put forward by [the Hospital] as the legitimate reason for its decision." Id.; see Anderson v. Radio One, Inc., 444 F. App'x 596, 597 (3d Cir. 2011) (non-precedential) (affirming summary judgment on the plaintiff's ADEA claim because she "never meaningfully disputed the substance of [the defendant's] repeated concerns with her job performance"). As stated, Strozyk largely agrees with the facts surrounding the disciplinary actions. Strozyk has failed to point to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

_____

most favorable to Strozyk, which includes an assumption that she did complain to Chiolo of sexual harassment. Moreover, regardless of Chiolo's impression of the complaint, she addressed it with McGrory and McGrory stopped the alleged behavior.

Regarding the October 19, 2015 discipline and Strozyk's assertion that she believed Jones wrote up the wrong individuals for discipline, the mere fact that the employer was wrong cannot establish pretext. Kautz, 412 F.3d at 467.

legitimate reasons for its action that a reasonable factfinder <u>could</u> rationally find them unworthy of credence." <u>Kautz</u>, 412 F.3d at 467 (quoting <u>Fuentes</u>, 32 F.3d at 765). Proving pretext "places a difficult burden on the plaintiff," and Strozyk has failed to meet that burden. <u>Fuentes</u>, 32 F.3d at 765.

In that Strozyk has failed to make out a prima facie claim of retaliation or establish that the Hospital's proffered reasons were pretextual, summary judgment is appropriate on Strozyk's retaliation claims.

## IV.  CONCLUSION

For the reasons set forth above, the Court will grant the Hospital's motion for summary judgment, entering judgment in its favor and against Strozyk.

An appropriate order follows.